## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| **STEVEN D. MARCRUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: _____** |
| | ) | |
| **HOBBY LOBBY STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### CLASS ACTION COMPLAINT
_____

Plaintiff Steven D. Marcrum ("Plaintiff"), on behalf of himself and the class described herein, states the following as his Complaint against defendant Hobby Lobby Stores, Inc. ("Defendant," "HL" or "Hobby Lobby").

### I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to its diversity jurisdiction under the Class Action Fairness Act. 28 U.S.C. §1332. There is complete diversity between the named plaintiff and defendant in the action, and diversity between the class members and Defendant.  This is a class action case where there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00. Jurisdiction is proper under 28 U.S.C. § 1332(d).

2.      Venue is proper in this Court under 28 U.S.C. §1391 because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## II.  PARTIES

3.      Steven D. Marcrum is a resident of Baldwin County, Alabama, and is over the age of nineteen (19) years.  Mr. Marcrum suffered an ascertainable loss and/or monetary damages as a result of the Defendant's unlawful conduct.

4.      Hobby Lobby is an Oklahoma Corporation, organized under the laws of the State of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma.

## III.  NATURE OF THE ACTION

5.      Hobby Lobby operates over seven hundred retail stores nationwide, primarily selling arts, crafts, fabrics, frames, small pieces of furniture and other similar merchandise.  Hobby Lobby's merchandise is available for purchase online or in its stores.  Through its online presence, Hobby Lobby sells and ships merchandise to all fifty states, Puerto Rico and the District of Columbia.

6.      Common law and state consumer protection laws in Florida prohibit deceptive advertising and trade practices.  By advertising discounts that were not actually provided to its customers, Hobby Lobby violated the common law of Florida by breaching the contract described below, or in the alternative being unjustly enriched by the business practices described below, and the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.* as described below.  Plaintiff brings this action against Hobby Lobby for engaging in a systemic scheme of falsely advertising merchandise discounts and "never-ending" sales.

7.      In violation of such laws, Hobby Lobby misleads its customers regarding the prices on much of its merchandise, as they relate to how coupon discounts are calculated.  Hobby Lobby says it takes coupon discounts off of "Regular" prices, but instead it takes them off a price it never sells merchandise at.  These prices are artificially inflated prices that are fictions created by Hobby

Lobby. Hobby Lobby offers percentage discount coupons and takes these percentage discount coupons from its artificially inflated rather than its everyday "Regular" prices. Hobby Lobby systemically refuses to give the advertised percentage discount coupon from the price at which the merchandise "Always" sells.

8.      At all times pertinent to this action, Hobby Lobby was utilizing this deceptive scheme.

9.      By advertising and purporting to offer discounts that were and are not actually provided to its customers, Hobby Lobby violated the common law and the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"). Fla. Stat. §501.201.

10.      Plaintiffs bring this action against Hobby Lobby seeking, *inter alia*, to stop this unlawful practice, recover overcharges paid by customers, and obtain the actual discounts that were denied to the customers.

## IV.    FACTUAL ALLEGATIONS

### A.    Mr. Marcrum's Purchase

11.      On March 2, 2017, Steven Marcrum was shopping at the Hobby Lobby on Davis Highway in Pensacola, Escambia County, Florida for a small table.

12.      Mr. Marcrum brought a coupon with him that stated he would get 40% off of "one item at regular price only."

13.      Mr. Marcrum chose a small table to purchase. The table was marked as "Always 30% off," at a price of $83.99. Any customer purchasing the table without a coupon would pay $83.99. Because the item was marked as "Always" 30% off," Mr. Marcrum thought that he would get 40% off of that price, for a final price of $50.39.

14.    Mr. Marcrum did not receive a price of $50.39 at the register when he went to check out. Instead, the 40% discount was taken off of a price of $119.99, making the price paid by Mr. Marcrum $71.99.  This is a difference of $21.60.

15.    This other price was on the item. However, Hobby Lobby's own information shows that this price is anything but "Regular."  The ticket said "Furniture always 30% off." Simply put, the "Regular" price is the price at which an item is "regularly" sold.  In this case, $83.99, not an artificial price that does not correspond to any sale of the item made by Hobby Lobby.  The $119.99 is a price made up by Hobby Lobby, and only used to calculate 40% off discounts.  No customer ever pays $119.99 for the piece of furniture Mr. Marcrum purchased.

16.    The above-referenced scheme is not unique to this particular item. Rather, many items are "Always" on sale, but coupon discounts are taken from a price the item never sells at, which is most definitely not the "Regular price" referenced in the coupon. Moreover, this scenario plays out, for all 40% off coupons, whether downloaded onto smart phones, printed from Hobby Lobby's website and brought into the store, or clipped from advertisements and other printed sales circulars. The operational language is identical.

**B.    Hobby Lobby's Signage and Advertisements Attempting to Justify the Artificial Price are, by Definition, Deceptive**

17.    The term "regular price" is not defined by the coupon.  However, Hobby Lobby's signage and advertisements refer to the "never" price as a "marked price," and then define "marked price" as "comparable prices offered by other sellers for similar products."

18.    This description is, in and of itself, deceptive.

19.     The FUDTPA states that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat. §501.204.  This section goes on to state that "…great weight shall be given to the interpretation of the Federal Trade Commission and the Federal Courts relating to § 5(c)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).

20.     The Federal Trade Commission Act language tracks the Florida Act in stating that "unfair or deceptive acts are hereby declared unlawful."  15 U.S.C. § 45(a)(1).  The Federal Trade Commission Act goes on to state that "the Commission is empowered to promulgate trade regulation rules which define with specificity acts or practices which are unfair or deceptive…a violation of a rule shall constitute an unfair or deceptive act or practice in violation of § 5(a)(1) of the Act."  16 C.F.R. §1.8.

21.     The Regulations require that if comparison is made to other merchandise "in the advertiser's trade area…of like grade and quality – in other words, comparable or competing merchandise – to that being advertised… The advertiser should, however, be reasonably certain…that the price advertised as being the price of comparable merchandise is being offered by representative retail outlets in the area."  16 C.F.R. § 233.2.  Hobby Lobby makes no attempt to ascertain prices in the area of its retail stores, and is not at all certain its "comparable" prices are offered by other retailers.  Its comparable prices are based on no reasonable market research.

22.     Not only is Hobby Lobby's use of the "comparable" language deceptive under the Regulations, but Hobby Lobby's contention that "Regular," as used directly in its coupons, if it refers to the "never" price, is also deceptive under the FTC Regulations.

23.     The FTC Regulations, 16 C.F.R. § 233.1, state specifically that it is deceptive to advertise a higher price as a "regular" price when the item is never sold for that price.  The Regulations state the following:

(a)   Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business)….the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the particle are being made in the area--that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving. Expressed another way, if a number of the principal retail outlets in the area are regularly selling Brand X fountain pens at $ 10, it is not dishonest for retailer Doe to advertise: "Brand X Pens, Price Elsewhere $ 10, Our Price $ 7.50".

(b)   The following example, however, illustrates a misleading use of this advertising technique. Retailer Doe advertises Brand X pens as having a "Retail Value $ 15.00, My Price $ 7.50," when the fact is that only a few small suburban outlets in the area charge $ 15. All of the larger outlets located in and around the main shopping areas charge $ 7.50, or slightly more or less. The advertisement here would be deceptive, since the price charged by the small suburban outlets would have no real significance to Doe's customers, to whom the advertisement of "Retail Value $ 15.00" would suggest a prevailing, and not merely an isolated and unrepresentative, price in the area in which they shop.

(c)   A closely related form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality--in other words, comparable or competing merchandise--to that being advertised….The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. For example, retailer Doe advertises Brand X pen as having "Comparable Value $ 15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive. [Guide II]

16 C.F.R. § 233.1.

24.    Simply put, the FUDTPA incorporates the description of and definition of deceptive and unfair trade practices contained in the Federal Trade Commission Act.  The FTC Act specifically states that the two primary representations Hobby Lobby uses to carry out it scheme in this case are, by definition, deceptive: (1) it is deceptive to state that a discount is taken from a "regular" price when the item is never sold at that price; and (2) it is deceptive to try to explain a "marked price," contending that it is a "Regular" price reflecting "comparable prices offered by other sellers for similar products" when the price is, in reality, fictitious, and there is no similar merchandise selling for such prices in the market area.

25.    Hobby Lobby cannot claim that it does not know that advertising "permanent" or "never ending" sales is not misleading. In 2014, it agreed to pay civil penalties in an action brought by the State of New York's Attorney General over "never ending" sales.

26.    Hobby Lobby operates over 700 locations throughout the country.  The policies regarding the items permanently on sale, and the 40% off coupons relating to never actually used prices, emanate from Hobby Lobby's corporate offices.  These policies, referenced above, are uniform throughout the country and apply to all stores and internet sales and shipments.

27.    Hobby Lobby's unlawful conduct is for the purpose of attracting customers to its stores with the promise of discounts that do not ever exist and to purchase items at false discounts. More specifically, Hobby Lobby's conduct is designed to encourage customers to buy items "Always" on sale with a 40% off coupon thinking they are getting a great bargain by getting 40% off of that "Always" or "regular" price.

28.    Plaintiffs have suffered an ascertainable loss and/or monetary damages as a result of Hobby Lobby's unlawful conduct.

## CLASS ALLEGATIONS

29.    Plaintiff brings this case as a class action in conformity with the 11th Circuit's opinion in Lisk v. Lumber One Wood Preserving, 792 F.3d 1331 (11th Cir. 2015), which held that Rule 23 class actions are maintainable for substantive claims under State Deceptive Trade Practices Act.

30.    Class Definition: Pursuant to Fed. R. Civ. P. 23(b)(1), (2) and (3), Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the proposed Plaintiff Class and Subclasses:

      a.    National Breach of Contract or Unjust Enrichment Class: Representative Marcrum is the representative for this class. The class is defined as all persons within the applicable statute of limitations period who purchased goods with a coupon at a Hobby Lobby in the United States, that were marked as "Always" on sale, but in any case where a price higher than the "Always" price was never charged for the goods, and the coupon discount was taken off of that higher price.

      b.    Florida Unfair and Deceptive Trade Practices Act Subclass: Representative Marcrum is the representative for this class. The class is defined as all persons within the applicable statute of limitations period who purchased goods with a coupon at a Hobby Lobby in Florida that were marked as "Always" on sale, but where a price higher than the "Always" price was never charged for the goods, and the coupon discount was taken off of that higher price.

31.    Numerosity: The members of each class and subclass are so numerous that their individual joinder would be impracticable in that: (a) the Class includes at least hundreds of individual members; (b) the precise number of Class members and their identities are unknown to Plaintiffs, but are well known to Hobby Lobby, and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the at least hundreds of

individual class members to be individually represented in separate actions; and (d) the relatively small amount of damages suffered by the class members does not make it economically feasible for those class members to file individual actions.

32.  <u>Commonality/Predominance:</u> Common questions of law and fact predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether Hobby Lobby's practices violated the Unfair and Deceptive Trade Practices Act of Florida.

b.  Whether Hobby Lobby took coupon discounts which were supposed to be taken off of "Regular prices," off of prices that were never used but were simply marked on items as a never used price.

c.  Whether Plaintiffs are entitled to damages under Florida Unfair and Deceptive Trade Practices Act referenced above.

d.  Whether Hobby Lobby has breached the contracts between it and the class members by the practices described herein, or alternatively whether Hobby Lobby has been unjustly enriched by the practices described herein.

33.  <u>Typicality:</u>  Plaintiff is typical of the claims of the class members and each subclass. Plaintiff and all class members have been injured by the same wrongful practices engaged in by Hobby Lobby.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class and subclass members, and are based on the same legal theories for the class and each subclass.

34.  <u>Adequacy:</u>  Plaintiff will fully and adequately assert and protect the interests of the class.  Plaintiff has counsel experienced in class actions and complex mass tort litigation.  Neither Plaintiff nor counsel have interests contrary to or conflicting with the interests of the class or subclasses.

35.    <u>Superiority:</u> A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the class members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is in the hundreds of thousands of dollars, if not millions of dollars, the individual damages suffered by each as a result of the wrongful conduct by Hobby Lobby are too small to warrant the expense of individual lawsuits. Even if the individual damages were sufficient to warrant individual lawsuits, the court system would be unreasonably burdened by the number of cases that would be filed.

36.    Plaintiff does not anticipate any difficulties in the management of this litigation management of this litigation.

## COUNT I

### (Alternative Class Claim for Breach of Contract)

37.    Plaintiff incorporates by reference, as if fully set forth herein, the factual allegations contained in paragraphs 1 through 36 above.

38.    This claim is brought by representative Marcrum on behalf of the National Breach of Contract Unjust Enrichment Class described above.

39.    Plaintiff and class members entered into contracts with Hobby Lobby when they manifested their acceptance of Hobby Lobby's offer by presenting goods at the Hobby Lobby registers, along with their coupons.

40.    Hobby Lobby breached the contract by charging Plaintiffs and the class members a discount off of another, irrelevant, higher, price, as opposed to the regular price of the item.

41.     At that point, a party who has been aggrieved may choose to affirm the contract

and recover the damages caused by the breach. Hastad v. Edwin K. Williams & Co. – East, 321

So. 2d 601, 603 (Fla. App. 4th Dist. 1975), which Mr. Marcrum, on behalf of himself and the class

does.

42.     Mr. Marcrum and the class have been damaged in that they did not get the discount

provided for in the contract created by their acceptance of the coupon offer. The measure of

damages is the difference between getting 40% off of the "Always" price described above, and

40% off of the fictitious "never" price described above. In Mr. Marcrum's case, that amount is

$21.60.

**WHEREFORE**, Plaintiff, on behalf of himself and the class described herein, demands

damages in an amount to be determined by struck jury.

## COUNT II

### (Alternative Class Claim for Unjust Enrichment)

43.     Plaintiff incorporates by reference, as if fully set forth herein, paragraphs 1 through

42 above.

44.     This claim is made alternatively, in the event that there is no contract between the

parties.

45.     Hobby Lobby's deception has unjustly enriched Hobby Lobby. The equitable

remedy of unjust enrichment exists to prevent the wrongful retention of a benefit in violation of

fundamental principles of justice or equity. The doctrine exists to prevent practices from retaining

the benefits of deceptions.

46.     In this case, it would be regrettable to allow Hobby Lobby to keep the benefits of deceiving customers into believing that the "regular" price of items as a price that is actually <u>never</u> charged by Hobby Lobby.

47.     In Mr. Marcrum's case, Hobby Lobby has been unjustly enriched in the amount of $21.60, which is the amount that Hobby Lobby retained as the result of taking the 40% off of the fictitious price as opposed to the actual, regular price.  Similarly, Hobby Lobby has been unjustly enriched each time it takes 40% off of a fictitious, never charged, higher price for merchandise that is "Always" on sale.

**WHEREFORE**, for the reasons stated herein, Plaintiff and the class demand damages in an amount to be determined by struck jury.

## COUNT III

**(Class Claim Under the Florida Unfair and Deceptive Trade Practices Act)**

48.     Plaintiff incorporates by reference, as if fully set forth herein, paragraphs 1 through 47 above.

49.     The FUDTPA, Fla. Stat. § 501.201, *et seq*. declares as unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

50.     The FUDTPA Fla. Stat. § 501.204(2), incorporates, as set forth above, the interpretations of the Federal Trade Commission Act. 15 U.S.C. § 45(c)(1).

51.     As stated above, the Regulations interpreting the FTC Act make it unlawful to: (a) represent a price as "Regular" when it is not regularly charged by the retailer, and (b) to represent a price as "similar" or "comparable" to similar merchandise at similar retailers unless the retailer has actually sought out such similar merchandise, and can point to similar merchandise at similar

retailers who have been charged the higher price. Hobby Lobby has not done this and can make no such showing.

52.    The FUDTPA provides a civil remedy for parties damaged by violation of its provision. In particular, it states that, "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part. Fla. Stat. § 501.211(1).

53.    The FUDTPA goes on to state that, "In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and Court costs as provided in § 501.2105. Fla. Stat. § 501.211(2).

54.    As stated above, advertising 40% off of a "Regular" price, but then taking that 40% off of a fictitious price, and maintaining that the "marked price" is a comparable price offered by other sellers for similar products when Hobby Lobby has done nothing to even check comparable prices for comparable merchandise in the market area, is violation of the FUDTPA, actionable under the civil remedies provision of the FUDTPA at § 501.211. Also, any merchandise in the area that could be deemed "comparable" is not priced as high as HL's fictitious prices.

55.    Plaintiffs and the class members have been damaged in an amount calculated as the difference between the price they paid taken off of an illusory, higher, price, and 40% off of the price items were regularly, or "always" sold at.

**WHEREFORE**, Plaintiff, on behalf of the Class described herein, demands the following relief:

        A.    That the Class defined be certified pursuant to Fed. R. Civ. P.

        B.    That undersigned counsel be appointed counsel for the Class.

C.      A declaration that the practice of offering coupons for 40% off of the true "Regular price" of an item, but calculating the discount from a fictitious, higher price, as opposed to the price at which the item is sold every day is a violation of the FUDTPA.

D.      Damages on behalf of Mr. Marcrum and the class in an amount equal to the difference in calculating 40% off of the "Always" price, as opposed to 40% off of the Hobby Lobby created fictitious price.

E.      An award of the costs of this action, including a reasonable attorneys' fee.

Further, Plaintiff reiterates all demands for relief stated herein, plus any other necessary and available relief under law and equity under the common law and statutory provisions cited herein.

## JURY DEMAND

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON
ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

*/s/ Joshua R. Gale*
Joshua R. Gale, Esquire
Florida Bar No.: 63283
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
101 N. Woodland Blvd. Ste. 600
DeLand, Florida 32720
Telephone: (386) 675-6946
Facsimile: (386) 675-6947
Email: JGale@wigginschilds.com

**OF COUNSEL**:
Brian M. Clark
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone:    (205) 314-0530
Email:  bclark@wigginschilds.com

Allan L. Armstrong
Armstrong Law Center, LLC
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama 35216

Darrell Cartwright
Cartwright Law Center, LLC
P.O. Box 383204
Birmingham, AL 35238


**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

**Hobby Lobby Stores, Inc.**
**c/o Corporation Service Company**
**1201 Hays Street**
**Tallahassee, FL 32301-2525**